UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LISA FERRER,                                    :

        Plaintiff,                      :

      -against-                            :                    03 Civ. 9113 (AJP)

JOHN E. POTTER, POSTMASTER GENERAL,    :                    **OPINION AND ORDER**

        Defendant.                      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**ANDREW J. PECK, United States Chief Magistrate Judge:**


      Plaintiff Lisa Ferrer brings this pro se Rehabilitation Act action against the United

States Postal Service ("USPS") claiming that she was harassed by a co-worker and her supervisor

and transferred to another station.    (Dkt. No. 6: 2d Am. Compl. ¶ 8.)[1]  The parties consented to

decision in this action by a Magistrate Judge pursuant to 28 U.S.C. § 636(c).    (Dkt. No. 14.)

Presently before the Court is defendant USPS's summary judgment motion.  For the reasons stated

below, the motion (Dkt. No. 23) is GRANTED.

---

[1]    Although Ferrer filed her Second Amended Complaint under the Americans With
Disabilities Act ("ADA"), §§ 42 U.S.C. 12112-17 (2d Am. Compl. at p. 1), disability
discrimination claims by federal employees must be brought under the Rehabilitation Act,
not the ADA.  See 42 U.S.C. § 12111(5)(B) (ADA does not apply to agencies of the United
States); 29 U.S.C. § 701 et seq.; see, e.g., Torres v. U.S. Dep't of Veteran Affairs, 02 Civ.
9601, 2004 WL 691237 at *1 n.1 (S.D.N.Y. Mar. 31, 2004); Barber v. Runyon, 97 Civ. 4798,
1998 WL 912065 at *3 n.4 (S.D.N.Y. Dec. 30, 1998); Warren v. Runyon, 97 Civ. 4085, 1998
WL 241932 at *2 (S.D.N.Y. May 14, 1998).

**<u>FACTS</u>**

Lisa Ferrer has worked for the USPS since 1987, and began working at the Hillside Station in the Bronx in February 2003, where she worked for a total of six or seven weeks. (Dkt. No. 23: Trager Aff. Ex. B: Ferrer Dep. at 5, 55, 89, 112.) According to Ferrer, while at this facility, tensions mounted between her and a co-worker, Nadine Robinson. (Ferrer Dep. at 78-79, 112-14, 116-18, 124-25, 131, 148-50, 160-61, 173, 215, 225; <u>see also</u> Dunston Aff. Ex. A: USPS Form 2564-A, Ferrer "Information for Pre-Complaint Counseling.") Their supervisor, Nilza Mercado, requested that Ferrer, rather than Robinson, be "detailed" (<u>i.e.</u>, temporarily transferred) to another station. (Ferrer Dep. at 121, 140, 173-74.) Ferrer agreed to be "detailed" to the Baychester Station in the Bronx, but she understood that it would be temporary. (Ferrer Dep. at 140, 174-75, 182, 214-15; Trager Aff. Ex. C.) Ferrer had the same favorable schedule at Baychester as she had had at Hillside. (Ferrer Dep. a 175.)

At some point after Ferrer transferred to the Baychester Station, she contends that Mercado told her that she needed to permanently "bid out" of the Hillside station (as opposed to the temporary transfer to Baychester), because Robinson had seniority. (Ferrer Dep. at 182-83, 207-08, 219, 224-25, 283, 285-86.) Ferrer succeeded in a bid to work at the Westchester Station, but never reported for duty there because she "wasn't ready due to what was going on, me having my case in court." (Ferrer Dep. at 5, 211, 251, 257.) Ferrer has been on "stress leave" without pay since March 2003. (Ferrer Dep. at 5.)

**Procedural History**

On March 26, 2003, Ferrer submitted an informal complaint to the USPS's EEO office, stating that she was detailed to the Baychester station "based on false accusations made by [Ferrer's] coworker Nadine Robinson." (Dunston Aff. Ex. A: USPS Form 2564-A.) On June 11, 2003, Ferrer received a June 9, 2003 USPS letter authorizing her to file a formal EEO complaint. (Dunston Aff. Ex. B: 6/9/03 EEO Letter; <u>see also</u> Ferrer Dep. at 258-59.)[2] The letter stated:

> As your allegations were not resolved [at the mediation], if you still believe you have been discriminated against on the basis on (unspecified) you have the right to file a formal EEO complaint.

_____

[2]     Ferrer testified at her deposition:

> Q.     I want to draw your attention to the second full paragraph, the one that begins, "Equal employment," the second sentence of that paragraph begins, "On June 11, 2003, you acknowledged receipt of PS Form 257A, notice of right to file individual complaint, which advised you that you had the right to file a formal complaint within 15 calendar days of the date you received notice."
>
>         Do you see where it says that?
>
> A.     Yes.
>
> Q.     Do you have any reason to believe that that sentence is not correct?
>
> A.     No.
>
> Q.     So you think that you did receive the form that's being referred to here on June 11, 2003?
>
> A.     Yes.

(Ferrer Dep. at 258-59.) A certification of delivery from the postal carrier confirmed delivery on Wednesday, June 11, 2003. (Dunston Aff. Ex. C: Postal Delivery Declaration Letter.)

> Enclosed are two forms for your signature and date. . . . You have the right to file a formal EEO complaint within fifteen (15) calendar days upon receipt of this correspondence.

(Dunston Aff. Ex. B: 6/9/03 USPS EEO Letter.)  Ferrer failed to file a formal EEO complaint until July 2, 2003, twenty-one days after June 11, the date she received the letter.  (Dunston Aff. ¶ 4 & Ex. D: Ferrer EEO Complaint.)  Ferrer explained at her deposition that because her father had died and she was having financial problems arranging for his burial, "[s]o it kind of distracted [her] from the case, you know, [she] totally forgot about the 15-day deadline."  (Ferrer Dep. at 260; see also Dkt. No. 17: 11/1/04 Conf. Tr. at 5-6.)  On July 22, 2003, the USPS EEO office dismissed Ferrer's complaint on the ground that Ferrer received the notice letter on June 11, 2003 but did not file her EEO complaint until July 2, 2003, beyond the applicable 15-day filing period.  (Dunston Aff. Ex. E: EEO Dismissal of Complaint.)  The EEO also dismissed Ferrer's complaint on the merits because Ferrer "did not link [the] complaint to any of the above-listed types of discrimination prohibited by law [i.e., Title VII, ADEA, Rehabilitation Act or Equal Pay Act].  Accordingly, we also dismiss your complaint pursuant to 29 C.F.R. § 1614.107(a)(1) for failure to state a claim."  (Dunston Aff. Ex. E: EEO Dismissal.)

Ferrer asserts in her Second Amended Complaint that Mercado and Mercado's supervisor, Mrs. Jackson, told Ferrer her that she was not capable of being a "window clerk" and that Ferrer "discovered in [her] medical records that it was noted that [she has] serious head problems and precaution should be taken."  (2d Am. Compl. ¶ 8; see also Ferrer Dep. at 192-96, 234-35.)[3]

---

[3]     The note about "serious head problems" is dated 6/18/91; it is not clear whether the
(continued...)

Ferrer had no proof that supervisor Mercado saw her medical records, but she assumed Mercado had access to them. (Ferrer Dep. at 265-66.) Ferrer also claims that Robinson and Mercado "conspired" against her "to make [her] look incompetent." (Ferrer Dep. at 112, 116-18, 124, 199, 240.) Ferrer explained that when Mercado told her the job was too much responsibility for her, since Mercado did not specify what was wrong with her job performance, Mercado must have meant that Ferrer "cannot mentally handle the job." (Ferrer Dep. at 192-96.) Ferrer admitted, however, that she did not "have a psychological disability during the time that [she was] at Hillside Station." (Ferrer Dep. at 198, 235-36.)

## ANALYSIS

## I.    SUMMARY JUDGMENT STANDARDS IN EMPLOYMENT DISCRIMINATION CASES[4/]

---

[3/]    (...continued)
handwritten word is "head" or "health." (2d Am. Compl., Attachment.) For purposes of this motion, the Court must assume it says "head."

[4/]    For additional cases authored by this Judge discussing the summary judgment standard in employment discrimination cases in language substantially similar to that in this entire section of this Opinion, see, e.g., Williams v. City of New York, 04 Civ. 1993, 2005 WL 839103 a *2-7 (S.D.N.Y. Apr. 12, 2005) (Peck, M.J.); Heskin v. Insite Adver., Inc., 03 Civ. 2598, 2005 WL 407646 at *10-16 (S.D.N.Y. Feb. 22, 2005) (Peck, M.J.); Taylor v. Potter, 99 Civ. 4941, 2004 WL 1811423 at *9-14 (S.D.N.Y. Aug. 16, 2004) (Peck, M.J.); Dodson v. CBS Broad., Inc., 02 Civ. 9270, 2004 WL 1336231 at *15-21 (S.D.N.Y. June 15, 2004) (Peck, M.J.); Slaitane v. Sbarro, 03 Civ. 5503, 03 Civ. 5504, 2004 WL 1202315 at *7-12 (S.D.N.Y. June 2, 2004) (Peck, M.J.); Diaz v. Weill Med. Ctr. of Cornell Univ., 02 Civ. 7380, 2004 WL 285947 at *13-17 (S.D.N.Y. Feb. 13, 2004) (Peck, M.J.); Viruet v. Citizen Advice Bureau, 01 Civ. 4594, 2002 WL 1880731 at *8-13 (S.D.N.Y. Aug. 15, 2002) (Peck, M.J.); Brown v. Cushman & Wakefield, Inc., 01 Civ. 6637, 2002 WL 1751269 at *12-13, 20-22 (S.D.N.Y. July 29, 2002) (Peck, M.J.), report & rec. adopted, 235 F. Supp. 2d 291 (S.D.N.Y. 2002) (Berman, D.J.); Kennebrew v. New York Hous. Auth., 01 Civ. 1654, 2002 WL 265120 at *6-10 (S.D.N.Y. Feb. 26, 2002) (Peck, M.J.); Williams v. NYC Dep't of (continued...)

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>see also</u>, e.g., <u>Celotex Corp.</u> v. <u>Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); <u>Weinstock</u> v. <u>Columbia Univ.</u>, 224 F.3d 33, 41 (2d Cir. 2000), <u>cert. denied</u>, 124 S. Ct. 53 (2003); <u>Lang</u> v. <u>Retirement Living Pub. Co.</u>, 949 F.2d 576, 580 (2d Cir. 1991).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment – here, defendant. <u>See</u>, e.g., <u>Adickes</u> v. <u>S.H. Kress & Co.</u>, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); <u>Chambers</u> v. <u>TRM Copy Ctrs. Corp.</u>, 43 F.3d 29, 36 (2d Cir. 1994); <u>Gallo</u> v. <u>Prudential Residential Servs., Ltd. P'ship</u>, 22 F.3d 1219, 1223 (2d Cir. 1994). The

---

[4]/      (...continued)
<u>Sanitation</u>, 00 Civ. 7371, 2001 WL 1154627 at *8-12 (S.D.N.Y. Sept. 28, 2001) (Peck, M.J.); <u>Gonzalez</u> v. <u>New York City Transit Auth.</u>, 00 Civ. 4293, 2001 WL 492448 at *6, 10 (S.D.N.Y. May 9, 2001) (Peck, M.J.); <u>Economou</u> v. <u>Caldera</u>, 99 Civ. 12117, 2000 WL 1844773 at *12 (S.D.N.Y. Dec. 18, 2000) (Peck, M.J.); <u>Cobian</u> v. <u>New York City</u>, 99 Civ. 10533, 2000 WL 1782744 at *7, 11 (S.D.N.Y. Dec. 6, 2000) (Peck, M.J.), <u>aff'd</u>, No. 01-7575, 23 Fed. Appx. 82, 2002 WL 4594 (2d Cir. Dec. 21, 2001); <u>Austin</u> v. <u>Ford Models, Inc.</u>, 95 Civ. 3731, 2000 WL 1752966 at *6, 8 (S.D.N.Y. Nov. 29, 2000) (Peck, M.J.), <u>aff'd</u>, No. 01-7030, 22 Fed. Appx. 76, 2001 WL 1562070 (2d Cir. Dec. 4, 2001), <u>cert. denied</u>, 537 U.S. 848, 123 S. Ct. 189 (2002); <u>Johns-Davila</u> v. <u>City of New York</u>, 99 Civ. 1885, 2000 WL 1725418 at *3 (S.D.N.Y. Nov. 20, 2000) (Peck, M.J.);  <u>Weber</u> v. <u>Parfums Givenchy, Inc.</u>, 49 F. Supp. 2d 343, 352, 354 (S.D.N.Y. 1999) (Wood, D.J. & Peck, M.J.); <u>Douglas</u> v. <u>Victor Capital Group</u>, 21 F. Supp. 2d 379, 387 (S.D.N.Y. 1998) (Stein, D.J. & Peck, M.J.); <u>Hernandez</u> v. <u>New York City Law Dep't Corp. Counsel</u>, 94 Civ. 9042, 1997 WL 27047 at *6, 12 (S.D.N.Y. Jan. 23, 1997) (Peck, M.J.).

movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof. See, e.g., Celotex Corp. v. Catrett, 477 U.S. at 323, 106 S. Ct. at 2552-53.

To defeat a summary judgment motion, the non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). Instead, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); accord, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587, 106 S. Ct. at 1356; see also, e.g., Weinstock v. Columbia Univ., 224 F.3d at 41 (at summary judgment, "[t]he time has come . . . 'to put up or shut up'") (citation omitted).

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S. Ct. at 2513.[5/] The Court draws all inferences in favor of the non-moving party only after determining that such inferences are reasonable, considering all the evidence presented. See, e.g., Apex Oil Co. v. DiMauro, 822 F.2d 246, 252 (2d Cir.), cert. denied, 484 U.S. 977, 108 S. Ct. 489 (1987). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source

---

[5/]    See also, e.g., Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 36; Gallo v. Prudential Residential Servs., Ltd. P'Ship, 22 F.3d at 1223.

from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." <u>Chambers</u> v. <u>TRM Copy Ctrs. Corp.</u>, 43 F.3d at 37.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact. <u>See, e.g.</u>, <u>Donahue</u> v. <u>Windsor Locks Bd. of Fire Comm'rs</u>, 834 F.2d 54, 58 (2d Cir. 1987); <u>Knight</u> v. <u>United States Fire Ins. Co.</u>, 804 F.2d 9, 11 (2d Cir. 1986), <u>cert. denied</u>, 480 U.S. 932, 107 S. Ct. 1570 (1987). To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant. <u>See, e.g.</u>, <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. at 248, 106 S. Ct. at 2510. While "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted." <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. at 248, 106 S. Ct. at 2510 (citation omitted); <u>see also</u>, <u>e.g.</u>, <u>Knight</u> v. <u>United States Fire Ins. Co.</u>, 804 F.2d at 11-12.

When a case turns on the intent of one party, as employment discrimination claims often do, a "trial court must be cautious about granting summary judgment." <u>Gallo</u> v. <u>Prudential Residential Servs., Ltd. P'Ship</u>, 22 F.3d at 1224.[6] Because the employer rarely leaves direct evidence of its discriminatory intent, the Court must carefully comb the available evidence in search of

---

[6] Accord, <u>e.g.</u>, <u>Feingold</u> v. <u>New York</u>, 366 F.3d at 149; <u>Kerzer</u> v. <u>Kingly Mfg.</u>, 156 F.3d 396, 400 (2d Cir. 1998) ("in an employment discrimination case when, as here, the employer's intent is at issue, the trial court must be especially cautious about granting summary judgment"); <u>McLee</u> v. <u>Chrysler Corp.</u>, 109 F.3d 130, 135 (2d Cir. 1997) ("caution must be exercised in granting summary judgment where motive is genuinely in issue"); <u>Cardoza</u> v. <u>Healthfirst Inc.</u>, 98 Civ. 3050, 1999 WL 782546 at *1-2 (S.D.N.Y. Sept. 30, 1999); <u>see also</u>, <u>e.g.</u>, <u>Chambers</u> v. <u>TRM Copy Ctrs. Corp.</u>, 43 F.3d at 40.

circumstantial proof to undercut the employer's explanations for its actions. E.g., Gallo v. Prudential Residential Srvs., Ltd. P'Ship, 22 F.3d at 1224. "[S]ummary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial. There must either be a lack of evidence in support of the plaintiff's position or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." Danzer v. Norden Sys., Inc., 151 F.3d 50, 54 (2d Cir. 1998) (citations omitted). Nonetheless, when an employer provides convincing evidence to explain its conduct and the plaintiff's argument consists of purely conclusory allegations of discrimination, the Court may conclude that no material issue of fact exists and it may grant summary judgment to the employer. E.g., Budde v. H&K Distrib. Co., No. 99-9449, 216 F.3d 1071 (table), 2000 WL 900204 at *1 (2d Cir. June 29, 2000); Stern v. Trustees of Columbia Univ., 131 F.3d 305, 312 (2d Cir. 1997); Meloff v. New York Life Ins. Co., 51 F.3d 372, 375 (2d Cir. 1995). In other words, to defeat summary judgment, "the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." Stern v. Trustees of Columbia Univ., 131 F.3d at 312; see, e.g., Schnabel v. Abramson, 232 F.3d 83, 90-91 (2d Cir. 2000); Weinstock v. Columbia Univ., 224 F.3d at 42 (The question on summary judgment is "whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination. To get to the jury, it is not enough . . . to disbelieve the employer; the factfinder must also believe the plaintiff's explanation of intentional discrimination.") (internal quotations & alterations omitted); Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996) (plaintiff must "produce not simply 'some' evidence, but

'sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not [discrimination] was the real reason for the discharge'").[7/]  Indeed, the Second Circuit "went out of [its] way to remind district courts that the 'impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable.'" Weinstock v. Columbia Univ., 224 F.3d at 41.

## II.   THE USPS IS GRANTED SUMMARY JUDGMENT ON FERRER'S REHABILITATION ACT CLAIM BECAUSE FERRER FAILED TO TIMELY ADMINISTRATIVELY EXHAUST SUCH CLAIM

"Exhaustion of administrative remedies requires that a federal employee comply with the EEOC regulations governing the Rehabilitation Act." Warren v. Runyon, 97 Civ. 4085, 1998 WL 241932 at *2 (S.D.N.Y. May 14, 1998); see, e.g., Bruce v. United States Dep't of Justice, 314 F.3d 71 (2d Cir. 2002); Belgrave v. Pena, 254 F.3d 384, 386 (2d Cir. 2001); Pauling v. Secretary of Dep't of Interior, 160 F.3d 133, 133-34 (2d Cir. 1998); Downey v. Runyon, 160 F.3d 139, 145 (2d Cir. 1998) ("Prior to bringing suit under the Rehabilitation Act . . . [plaintiff] was obliged to exhaust the administrative remedies at his disposal."); Jenkins v. Potter, 271 F. Supp. 2d 557, 562 (S.D.N.Y. 2003) ("Prior to bringing suit in federal district court under Title VII and the Rehabilitation Act, a federal employee is required to exhaust all of the administrative remedies at her disposal in a timely fashion.") (citing Pauling and Downey); Fontanez v. Thompson, 00 Civ. 2090, 2003 WL 1964052 at *8 (S.D.N.Y. Apr. 24, 2003) ("Under Title VII, the Rehabilitation Act, and the ADEA, employees

---

[7/]   See also, e.g., Budde v. H&K Distrib. Co., 2000 WL 900204 at *1; Scaria v. Rubin, 94 Civ. 3333, 1996 WL 389250 at *5 (S.D.N.Y. July 11, 1996) (Peck, M.J.), aff'd, 117 F.3d 652, 654 (2d Cir. 1997).

must exhaust all administrative remedies in a timely fashion before filing suit in federal court."); Baber v. Runyon, 97 Civ. 4798, 1998 WL 912065 at *3 (S.D.N.Y. Dec. 30, 1998) ("A federal employee seeking redress under the Rehabilitation Act also must exhaust administrative remedies. . . . Employees of the Postal Service are covered under the statute.  Section 501 incorporates the remedies under Title VII.  A plaintiff seeking redress under the Rehabilitation Act must therefore comply with the exhaustion requirements under Title VII. . . .") (citations omitted).

Under the relevant regulations, a postal employee who believes that he or she has been discriminated against must contact an EEO counselor within 45 days of the date of the alleged discriminatory incident or personnel action. 29 C.F.R. § 1614.105(a)(1); see generally 29 C.F.R. § 1614.101 et seq; see also, e.g., Bruce v. United States Dep't of Justice, 314 F.3d at 74; Belgrave v. Pena, 254 F.3d at 386; Torres v. U.S. Dep't of Veteran Affairs, 02 Civ. 9601, 2004 WL 691237 at *3-4 (S.D.N.Y. Mar. 31, 2004); Fontanez v. Thompson, 2003 WL 1964052 at *8; Costanzo v. United States Postal Serv., 00 Civ. 5044, 2003 WL 1701998 at *4 (S.D.N.Y. Mar. 31, 2003); Baber v. Runyon, 1998 WL 912065 at *2; Warren v. Runyon, 1998 WL 241932 at *2.

If counseling is not successful, the counselor is required to inform the aggrieved employee that he or she has a right to file a formal EEO complaint.  29 C.F.R. § 1614.105(d); see, e.g., Torres v. U.S. Dep't of Veteran Affairs, 2004 WL 691237 at *4.  The employee's receipt of this notice triggers a 15-day period within which to file a formal EEO complaint.  29 C.F.R. § 1614.106(b); see, e.g., Montesano v. Principi, No. 01-6149, 47 Fed. Appx. 608, 609, 2002 WL 31260044 at *1 (2d Cir. Oct. 9, 2002); Belgrave v. Pena, 254 F.3d at 386; Torres v. U.S. Dep't of Veteran Affairs, 2004 WL 691237 at *4; Fontanez v. Thompson, 2003 WL 1964052 at *8 n.7;

Costanzo v. United States Postal Serv., 2003 WL 1701998 at *4; Moore v. Potter, 217 F. Supp. 2d 364, 370 (E.D.N.Y. 2002); Baber v. Runyon, 1998 WL 912065 at *3; Chalom v. Perkins, 1998 WL 851610 at *3; Warren v. Runyon, 1998 WL 241932 at *2.  Failure to comply with these time limits is grounds for the EEO office to dismiss the complaint without a hearing.  29 C.F.R. § 1614.107(a)(2).

Compliance with these deadlines "'is a condition of the waiver of sovereign immunity and thus must be strictly construed.'" Costanzo v. United States Postal Serv., 2003 WL 1701998 at *5 (quoting Irwin v. Department of Veteran Affairs, 498 U.S. 89, 94, 111 S. Ct. 453, 456 (1990)); see also, e.g., Moore v. Potter, 217 F. Supp. 2d at 369 ("A federal employee's failure to exhaust administrative remedies or failure to abide by the prescribed time provisions does not trigger the waiver of sovereign immunity and a district court is deprived of subject matter jurisdiction to decide that employee's case."); Chalom v. Perkins, 97 Civ. 9505, 1998 WL 851610 at *2-3 (S.D.N.Y. Dec. 9, 1998) ("The Supreme Court has held that waivers of sovereign immunity, and their limiting conditions, must be strictly construed.  If . . . the conditions under which the government has agreed to waive that immunity have not been met, federal subject matter jurisdiction does not exist.  Thus, a claimant may not sue the federal government without complying with all statutory and regulatory prerequisites. . . . If a federal employee does not exhaust her administrative remedies, or does not do so in a timely fashion, then sovereign immunity has not been waived, and a federal court is deprived of subject matter jurisdiction to hear that employee's claim.") (citations omitted); Warren v. Runyon, 1998 WL 241932 at *2.  However, "[i]t is defendants' burden to prove that plaintiff did not timely exhaust her administrative remedies." Costanzo v. United States Postal Serv., 2003 WL 1701998

H:\O PIN\FERRER

at *5; <u>see also</u>, <u>e.g.</u>, <u>Simmons</u> v. <u>Heyman</u>, 97 Civ. 0434, 2000 WL 520664 at *3 (S.D.N.Y. May 1, 2000); <u>German</u> v. <u>Pena</u>, 88 F. Supp. 2d 216, 220 (S.D.N.Y. 2000).

The administrative record reveals, and Ferrer admitted at her deposition, that she received the EEO Office's June 9, 2003 15-day notice letter on June 11, 2003, but did not file her formal EEO complaint until July 2, 2003, twenty-one days later. (<u>See</u> page 3 & n.2 above.) As such, as the USPS EEO Office found (<u>see</u> page 4 above) her administrative complaint was untimely, which would preclude this Court from hearing her federal claim (<u>see</u> cases cited at pages 10-11 above).

Ferrer's opposition papers raise two arguments about why her EEO complaint was not untimely. First, she now claims that she does not really remember when she got the June 9, 2003 letter and that defendant USPS has not proved that she received it on June 11, 2003. (<u>See</u> Dkt. No. 25: Ferrer SJ Opp. at 1-2; <u>see also</u> Dkt. No. 28: Ferrer 4/12/05 Submission at 2-4.) The USPS submitted a postal carrier's statement that he delivered the letter on June 11, 2003. (<u>See</u> page 3 n.2 above.) More importantly, Ferrer admitted before the USPS EEO Office and in her deposition in this case that she received the letter on June 11, 2003 (<u>see</u> page 3 & n.2 above). Ferrer knew the importance of this question before her deposition, both from the EEO Dismissal and the November 1, 2004 conference with the Court (<u>see</u> pages 3-4 above), yet she unequivocally testified at her deposition to receipt on June 11, 2003. Her vague allegations to the contrary now cannot be used to create an issue of fact to avoid summary judgment. "It is black letter law that affidavits which contradict prior deposition testimony are disregarded on a summary judgment motion." <u>Johns-Davila</u> v. <u>City of New York</u>, 99 Civ. 1885, 2000 WL 1725418 at *8 & n.23 (S.D.N.Y. Nov. 20, 2000) (Peck, M.J.) (citing cases). In any event, all Ferrer now says is that she does not

recall when she received the June 9 letter. Even if the USPS could not directly prove receipt on June 11, which it has done, it would be entitled to a presumption that the letter was received by Ferrer within three days of its June 9 mailing, i.e., by June 12, 2003. See, e.g., Sherlock v. Montifiore Med. Ctr., 84 F.3d 522, 525 (2d Cir. 1996) ("Normally it is assumed that a mailed document is received three days after its mailing."); Toriola v. New York City Transit Auth., 02 Civ. 5902, 2005 WL 550973 at *6 (S.D.N.Y. Mar. 9, 2005) ("Normally, it is 'assumed that a mailed document is received three days after its mailing,' which, in the situation of the government providing notice to a party, is presumed to be the date shown on the notice.") (quoting Sherlock); Francis v. Elmsford Sch. Dist., 04 Civ. 2687, 2005 WL 151924 at *3 (S.D.N.Y. Jan. 25, 2005) ("As for the actual receipt of a letter, in this Circuit, 'there is a rebuttable presumption that a mailed document is received three days after its mailing.'"); Culbertson v. Charosa Found. Corp., No. 03-CV-3742, 2004 WL 2370686 at *2 (E.D.N.Y. Oct. 18, 2004) ("[I]t is presumed that a mailed document is received three days after its mailing."); Moore v. Potter, 217 F. Supp. 2d at 372 ("With no evidence to the contrary, the Court assumes that the plaintiff received the [March 17] decision by Monday, March 20, 2000."); Chalom v. Perkins, 1998 WL 851610 at *3.

Second, construing her papers liberally, Ferrer argues that the time limit for her to have filed her EEO complaint should be subject to equitable tolling because her father's death caused her psychological problems that prevented her from timely filing her EEO complaint. (Dkt. No. 25: Ferrer S.J. Opp. at 1-2; see also page 4 above.)

The administrative EEO time-limits are subject to equitable tolling. See, e.g., Bruce v. United States Dep't of Justice, 314 F.3d at 74; Torres v. U.S. Dep't of Veteran Affairs, 2004 WL

691237 a *4; <u>Jenkins</u> v. <u>Potter</u>, 271 F. Supp. 2d at 563; <u>Moore</u> v. <u>Potter</u>, 217 F. Supp. 2d a 373;

<u>Avillan</u> v. <u>Potter</u>, 01 Civ. 1648, 2002 WL 252479 at *3 (S.D.N.Y. Feb. 21, 2002); <u>Chalom</u> v.

<u>Perkins</u>, 1998 WL 851610 at *5-6.

"Equitable tolling has been applied 'only sparingly' in private suits and a 'no more

favorable tolling doctrine may be employed against the Government." <u>Jenkins</u> v. <u>Potter</u>, 271 F.

Supp. 2d at 563 (quoting <u>Irwin</u> v. <u>Department of Veteran Affairs</u>, 498 U.S. at 95, 111 S. Ct. at 457);

<u>see also</u>, <u>e.g.</u>, <u>Haghpassand</u> v. <u>Reuters America Inc.</u>, No. 04-2463, 120 Fed. Appx. 859, 862, 2005

WL 195092 at *2 (2d Cir. Jan. 28, 2005) ("[E]quitable tolling is permissible, but only 'in rare and

exceptional circumstances, in which a party is prevented in some extraordinary way from exercising

his rights.'"); <u>Gibson</u> v. <u>New York City Police Dep't</u>, No. 98-7947, 201 F.3d 431 (table), 1999 WL

1070102 at *1 (2d Cir. Nov. 18, 1999) ("[E]quitable relief is extended sparingly."); <u>Moore</u> v. <u>Potter</u>,

217 F. Supp. 2d 373 ("courts have permitted such [equitable] tolling 'only sparingly'"); <u>Chalom</u>

v. <u>Perkins</u>, 1998 WL 851610 at *5.

The requirements for equitable tolling have been described in various ways in

different cases, but it invariably comes down to whether plaintiff was diligent and whether the

defendant somehow misled the plaintiff. <u>See</u>, <u>e.g.</u>, <u>Harrison</u> v. <u>Potter</u>, 323 F. Supp. 2d 593, 601

(S.D.N.Y. 2004) ("In deciding whether to toll a time period for filing, courts seek to balance the

necessity of adhering to statutory procedural requirements with equitable considerations of

dismissing claims on technicalities. This Court is guided by some general factors to be considered

in these circumstances, namely, whether the plaintiff believes she has complied with the

requirements, whether there is evidence of any affirmative misconduct on the part of the defendant,

and whether the plaintiff received sufficient notice."); <u>Avillan</u> v. <u>Potter</u>, 2002 WL 252479 at *3 ("Equity will not actually lift the procedural bar, however, unless the plaintiff shows that he (1) was unaware of or unable to meet his procedural obligations (2) because of affirmative misconduct on the part of the defendant."); <u>Chalom</u> v. <u>Perkins</u>, 1998 WL 851610 at *5 ("Equitable tolling is not available when it is the fault of the claimant for failing to exercise due diligence in meeting the filing deadline.").

"'The burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff,' and courts are 'less forgiving in receiving late filings where the claimant failed to exercise due diligence in pursuing his legal rights.'" <u>Avillan</u> v. <u>Potter</u>, 2002 WL 252479 at *3 (citations omitted); <u>see also</u>, <u>e.g.</u>, <u>Chapman</u> v. <u>ChoiceCare Long Island Term Disability Plan</u>, 288 F.3d 506, 512 (2d Cir. 2002) ("[T]he burden of proving that tolling is appropriate rests on the plaintiff."); <u>Lewis</u> v. <u>Connecticut Dep't of Corr</u>., 355 F. Supp. 2d 607, 616 n.5 (D. Conn. 2005) ("Though defendants initially bear the burden of establishing the affirmative defense of failure to exhaust administrative remedies, once established, the burden shifts to plaintiff to provide facts sufficient to counter the affirmative defense, for instance, facts showing equitable tolling . . ."); <u>Lloyd</u> v. <u>Bear Stearns & Co</u>., 99 Civ. 3323, 2004 WL 2848536 at *10 (S.D.N.Y. Dec. 9, 2004) ("The plaintiff bears the burden of 'demonstrating the appropriateness of equitable tolling.'") (citing <u>Boos</u> v. <u>Runyon</u>, 201 F.3d 178, 185 (2d Cir. 2000)); <u>Fields</u> v. <u>Merrill Lynch, Pierce, Fenner & Smith, Inc</u>., 301 F. Supp. 2d 259, 263 (S.D.N.Y. 2004) (same).

Here, Ferrer does not claim that she was misinformed by the USPS as to the fifteen day deadline or that any USPS action caused her to miss the fifteen day deadline to file her formal EEO complaint. Rather, she claims that she was "distracted" by her father's death and "totally forgot about the 15-day deadline." (Ferrer Dep. at 260, quoted at page 3 above.) That alone is not sufficient for equitable tolling. See, e.g., South v. Saab Cars, 28 F.3d 9, 12 (2d Cir.1994) ("[A] plaintiff's failure to act diligently is not a reason to invoke equitable tolling."); Boos v. Runyon, 201 F.3d at 185 (Plaintiff's "conclusory and vague claim, without a particularized description of how her [mental] condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights, is manifestly insufficient to justify any further inquiry into tolling."); Jenkins v. Potter, 271 F. Supp. 2d at 564 (union representative's "wife's terminal illness" not sufficiently "extraordinary" circumstance to justify equitable tolling); Moore v. Potter, 217 F. Supp. 2d at 373 ("Equitable tolling is not available when it is the fault of the claimant for failing to exercise due diligence in meeting the filing deadlines."); Chalom v. Perkins, 1998 WL 851610 at *5-6 ("Even if [plaintiff] did offer proof of the mental grief she alludes to, it would not reach the high standard that this circuit has applied.") (citing cases); Brundin v. United States, 95 Civ. 2689, 1996 WL 22370 at *5 (S.D.N.Y. Jan. 19, 1996) ("Although the plaintiff does supply an excuse for the delay – the unexpected death of her father – this reason alone does not warrant equitable tolling.").

The Court finds that Ferrer has not met her high burden of showing that this is an extraordinary case where equitable tolling should be applied against the government. Rather, it is Ferrer's own lack of diligence that caused her to fail to meet the fifteen day filing deadline.[8]

The USPS is granted summary judgment dismissing Ferrer's claims.

---

[8] Even if the Court were to review Ferrer's claims on the merits, Ferrer has presented no evidence of discrimination pursuant to the Rehabilitation Act. The USPS's proffered explanation that Ferrer was told to transfer to another location because of a personality conflict with another (more senior) employee is a legitimate non-discriminatory reason. See, e.g., Moss v. Enlarged City Sch. Dist., No. 03-7342, 81 Fed. Appx. 389, 390, 2003 WL 22849963 at *1 (2d Cir. Dec. 2, 2003) ("[D]efendants advanced legitimate non-discriminatory reasons for non-remand, i.e., proof that Moss was not performing her job well and had personality conflicts with GASD staff and administrators."); Pace v. Paris Maint. Co., 107 F. Supp. 2d 251, (S.D.N.Y. July 12, 2000) ("Defendants have articulated a legitimate, non-retaliatory reason for Pace's removal from the Building: the constant personality conflict between Pace and Galea which led to Pace's insubordination."); Serrano v. Runyon, No. 3:95-469, 1997 WL 718976 at *3 (D. Conn. Aug. 22, 1997) ("Discord based on personality conflicts between co-workers or between a supervisor and an employee is not actionable under Title VII.") (citing cases). While Ferrer claims that she was told she was too slow and the job was too much for her (see page 5 above), that is not demonstrative of disability discrimination, as opposed to poor performance. See, e.g., Valentine v. Standard & Poor's, 50 F. Supp. 2d 262, 284 (S.D.N.Y. 1999) (Sotomayor, C.J.) (No finding of disability discrimination where "[t]he criticisms that were leveled at plaintiff, both before and after disclosure of his mental illness . . . dealt with his sloppiness, lateness, inattentiveness, lack of creativity, poor writing, weak analysis, impressions created outside the department and relationships with others . . . "). The only proof Ferrer offers for her argument that her supervisor viewed her as disabled is a 1991 medical note that may say "head problems" (see page 4 & n.3 above), but Ferrer has offered no proof that her supervisor Mercado saw that note when she caused Ferrer to transfer in 2003. Finally, transfer to another location (equally convenient and with the same hours) is not an adverse employment action. See, e.g., Cobian v. New York City, 99 Civ. 10533, 2000 WL 1782744 at *17 (S.D.N.Y. Dec. 6, 2000) (Peck, M.J.) (citing cases), aff'd, No. 01-7575, 23 Fed. Appx. 82, 2002 WL 4594 (2d Cir. Dec. 21, 2001). Thus, even if the Court had jurisdiction to review Ferrer's claim, she would not prevail.

## **CONCLUSION**

For the reasons stated above, defendant USPS's summary judgment motion (Dkt. No.

23) is granted. The Clerk of Court is to enter judgment for defendant dismissing Ferrer's complaint.

SO ORDERED.

DATED:     New York, New York
           May 3, 2005

_____
**Andrew J. Peck**
United States Chief Magistrate Judge

Copies to:     Lisa Ferrer
               Mara E. Trager, Esq.